Joseph H. Harrington
Acting United States Attorney
Eastern District of Washington
George J.C. Jacobs, III
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAY 0 2 2017

SEAN F. McAVOY, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **2:17-CR-74-WFN** |
| | ) | |
| Plaintiff, | ) | INFORMATION |
| | ) | |
| vs. | ) | Vio:  18 U.S.C. § 371 |
| | ) | Conspiracy to Commit Offense |
| JOHN THOMAS REESE, | ) | Against the United States |
| | ) | |
| Defendant. | ) | Notice of Forfeiture |
| | ) | |
| | ) | |

The Acting United States Attorney Charges that:

At all times relevant and material to this Indictment:

## GENERAL ALLEGATIONS

1.      The Social Security Administration (SSA) is a department or agency of the United States.  The SSA is responsible for administering Title II Disability Insurance Benefits (DIB).  The object of DIB is to replace part of earnings lost because of a physical or mental impairment.  Monthly benefits are paid to eligible disabled persons throughout their period of disability.  To be eligible for disability benefits, a person must be unable to engage in Substantial Gainful Activity (SGA). When a person receives SSA Title II DIB, a person is eligible to work while receiving such benefits as long as the person does not earn over the SGA amount set by SSA. Between 2005 and 2014, the monthly SGA amount for non-blind individuals increased from $830 to $1070.  After a person is determined by SSA to be eligible for

INFORMATION-1
5-2-17 Reese Information.docx

SSA Title II DIB, a person's entitlement to continue to receive Title II DIB may be terminated by the SSA if the person earns in excess of the monthly SGA amount.

2.    After a person becomes eligible for Title II DIB, the person may attempt to return to the workforce. As an incentive, SSA provides a "trial work period" in which the beneficiary may attempt to work full time (above the SGA) and still collect benefits. In order to begin the trial work period, the beneficiary must first contact SSA and inform them of their intentions to return to work. The trial work period will last no longer than nine months. At the conclusion of the nine month trial work period, the beneficiary can either elect to stay working full time at which point their benefits will cease or they can stop working and continuing receiving DIB. After the trial work period is completed, the beneficiary is no longer allowed to work over SGA and collect their DIB benefits.

3.    JOHN THOMAS REESE owned and operated JT Educational Consultants ("JTEC"), a business located at 25 N Wenatchee Avenue, Suite 205, Wenatchee, Washington, and 1513 Apollo Place, Wenatchee, Washington. On or about April 7, 2014, this business was registered in the State of Washington as a corporation.

4.    JOHN THOMAS REESE was responsible for issuing payroll checks to JTEC's employees.

5.    DEBRA J. JAY and KENNETH LEWIS JAY aka "Lewy Jay," who are not charged herein, were married and resided in Wenatchee, Washington. DEBRA J. JAY began receiving SSA Title II DIB in or about 2005.

6.    Beginning in or about 2005 and continuing through in or about August 2014, JOHN THOMAS REESE employed DEBRA J. JAY at JTEC.

### THE CONSPIRACY

7.    Beginning at a time unknown, but no later than October 2007, and continuing through in or about June 2014, the exact dates being unknown, in the Eastern District of Washington and elsewhere, JOHN THOMAS REESE, DEBRA J.

INFORMATION-2
5-2-17 Reese Information.docx

JAY and KENNETH LEWIS JAY aka "Lewy Jay," did knowingly and intentionally combine, conspire, confederate, and agree with DEBRA J. JAY and KENNETH LEWIS JAY aka "Lewy Jay," who are not charged herein, together and with others known and unknown to commit an offense against the United States, that is:  to embezzle, steal, and purloin money of the United States Social Security Administration ("SSA"), a department and agency of the United States, namely, SSA-funded Disability Insurance Benefits ("DIB") payments made to DEBRA J. JAY to which JOHN THOMAS REESE, DEBRA J. JAY, and KENNETH LEWIS JAY aka "Lewy Jay," knew DEBRA J. JAY was not entitled, having a value of approximately $88,138.10, in violation of 18 U.S.C. § 641.

## OBJECT OF THE CONSPIRACY

8.    The purpose of the conspiracy was to conceal from the Social Security Administration DEBRA J. JAY's true earnings for her work at JTEC, to allow DEBRA J. JAY to fraudulently receive Social Security Disability Insurance Benefits, and to allow DEBRA J. JAY to falsely report material information for use by the Social Security Administration in determining Social Security Disability Insurance Benefits payments.

9.    JOHN THOMAS REESE and other individuals not named herein would facilitate the payment of wages to DEBRA J. JAY in such a way that all of DEBRA J. JAY's actual earnings would not be reported in her name to the Social Security Administration and the Internal Revenue Service.

10.    JOHN THOMAS REESE and other indviduals not named herein would benefit by retaining the services of DEBRA J. JAY, and DEBRA J. JAY would benefit by receiving earnings from employment in addition to Social Security Disability Income Benefits payments which she would not be entitled to receive.

## MANNER AND MEANS OF THE CONSPIRACY

11.    It was part of the conspiracy that JOHN THOMAS REESE and DEBRA J. JAY agreed that DEBRA J. JAY would work at an hourly rate, but be paid for her

INFORMATION-3
5-2-17 Reese Information.docx

work in part by methods other than a company payroll check made payable to her, thereby concealing her true earnings from the Social Security Administration.

12.    It was further part of the conspiracy that, beginning in and around January 2007, JOHN THOMAS REESE, DEBRA J. JAY, and KENNETH LEWIS JAY aka "Lewy Jay," agreed that a portion of DEBRA J. JAY's wages would be paid by payroll check in the name and social security number of DEBRA J. JAY's husband, KENNETH LEWIS JAY aka "Lewy Jay," even though he had not earned those wages.

13.    It was further part of the conspiracy that JOHN THOMAS REESE, DEBRA J. JAY, KENNETH LEWIS JAY aka "Lewy Jay," and other individuals not named herein, agreed that DEBRA J. JAY would fill out a monthly timesheet in her name that understated the total number of hours she worked.

14.    It was further part of the conspiracy that JOHN THOMAS REESE, DEBRA J. JAY, KENNETH LEWIS JAY aka "Lewy Jay," and other individuals not named herein, agreed that DEBRA J. JAY would fill out a monthly timesheet in her husband's name that reported the additional hours she worked in order to conceal her true income and number of hours she worked from the Social Security Administration.

15.    It was further part of the conspiracy that JOHN THOMAS REESE, DEBRA J. JAY, and KENNETH LEWIS JAY aka "Lewy Jay" agreed that on a monthly basis JOHN THOMAS REESE would issue one JTEC payroll check to DEBRA J. JAY and another JTEC payroll check to KENNETH LEWIS JAY aka "Lewy Jay" and the combination of the two payroll checks constituted DEBRA J. JAY's true monthly wages.

16.    It was further part of the conspiracy that, beginning no later than in or about October 2007, JOHN THOMAS REESE concealed and disguised DEBRA J. JAY's true JTEC earnings by signing and issuing payroll checks made payable to DEBRA J. JAY that constituted only a portion of her wages.

17.    It was further part of the conspiracy that, beginning no later than in or about October 2007, JOHN THOMAS REESE concealed and disguised DEBRA J. JAY's true JTEC earnings by signing and issuing payroll checks made payable to KENNETH LEWIS JAY aka "Lewy Jay."

18.    It was further part of the conspiracy that, from time to time, JOHN THOMAS REESE agreed to increase DEBRA J. JAY's hourly wage rate and number of hours worked while continuing to issue payroll checks to DEBRA J,. JAY under her social security number that understated her gross earnings per pay period.

19.    It was further part of the conspiracy that JOHN THOMAS REESE, DEBRA J. JAY, and KENNETH LEWIS JAY aka "Lewy Jay," caused federal W-2 wage and tax statements to be submitted to the Social Security Administration and the Internal Revenue Service that falsely underreported DEBRA J. JAY's 2007, 2008, 2009, 2010, 2010, 2011, 2012, 2013, and 2014 earnings.

20.    It was further part of the conspiracy that JOHN THOMAS REESE, DEBRA J. JAY, and KENNETH LEWIS JAY aka "Lewy Jay," caused federal W-2 wage and tax statements to be submitted to the Social Security Administration and Internal Revenue Service that falsely reported a significant portion of DEBRA J. JAY's earnings from 2007 through June, 2014 as KENNETH LEWIS JAY's, aka "Lewy Jay," earnings.

21.    It was further part of the conspiracy that the payment of a significant amount (approximately between $1,100 and $1,200 monthly) of DEBRA J. JAY's earnings under her husband's name and social security number would allow DEBRA J. JAY to falsely report material information, including her hourly pay and monthly earnings, for use by the SSA in determining her DIB payments.

22.    It was part of the conspiracy that JOHN THOMAS REESE, DEBRA J. JAY, KENNETH LEWIS JAY aka "Lewy Jay," and other individuals not named herein, would by deceit, craft, trickery, and dishonest means defraud the United States Social Security Administration by making false statements and failing to disclose to

INFORMATION-5
5-2-17 Reese Information.docx

the Social Security Administration information that was relevant to the determination as to whether DEBRA J. JAY was eligible to receive Social Security Disability Insurance Benefits payments.

## OVERT ACTS

23.     In furtherance of the conspiracy and to effect the objects thereof, JOHN THOMAS REESE, DEBRA J. JAY, KENNETH LEWIS JAY aka "Lewy Jay," and other individuals not named herein, performed or caused to be performed overt acts in the Eastern District of Washington and elsewhere, including but not limited to:

24.     Beginning in or about October 2007, and continuing through in or about June 2014, on a monthly basis, in order to conceal the actual hours she worked, DEBRA J. JAY filled out two timesheets, one in her name and one in her husband's name.

25.     In or about 2007, JOHN THOMAS REESE and individuals not named herein concealed DEBRA J. JAY's true wages by causing to be issued payroll payments to KENNETH LEWIS JAY aka "Lewy Jay," for work performed by DEBRA J. JAY.

26.     In or about 2008, JOHN THOMAS REESE and individuals not named herein concealed DEBRA J. JAY's true wages by causing to be issued payroll payments to KENNETH LEWIS JAY aka "Lewy Jay," for work performed by DEBRA J. JAY.

27.     In or about 2009, JOHN THOMAS REESE and individuals not named herein concealed DEBRA J. JAY's true wages by causing to be issued payroll payments to KENNETH LEWIS JAY aka "Lewy Jay," for work performed by DEBRA J. JAY.

28.     On or about January 31, 2009, JOHN THOMAS REESE signed and submitted a letter to the SSA materially misrepresenting the true amount of wages JTEC paid DEBRA J. JAY in 2007. JOHN THOMAS REESE falsely represented to

the SSA that the wages paid DEBRA J. JAY in 2007 were $9,714; when in truth and fact, the total wages paid to her were $23,405.50.

29.    In or about 2010, JOHN THOMAS REESE and individuals not named herein concealed DEBRA J. JAY's true wages by causing to be issued payroll payments in the name of fictitious employee KENNETH LEWIS JAY aka "Lewy Jay," for work performed by DEBRA J. JAY.

30.    In or about 2011, JOHN THOMAS REESE and individuals not named herein concealed DEBRA J. JAY's true wages by causing to be issued payroll payments in the name of KENNETH LEWIS JAY aka "Lewy Jay," for work performed by DEBRA J. JAY.

31.    On or about April 16, 2011, JOHN THOMAS REESE, aided and abetted by DEBRA J. JAY and KENNETH LEWIS JAY aka "Lewy Jay," falsely reported material information regarding DEBRA J. JAY's 2011 wages to the SSA.

32.    In or about 2012, JOHN THOMAS REESE and individuals not named herein concealed DEBRA J. JAY's true wages by causing to be issued payroll payments to KENNETH LEWIS JAY aka "Lewy Jay," for work performed by DEBRA J. JAY.

33.    In or about 2013, JOHN THOMAS REESE and individuals not named herein concealed DEBRA J. JAY's true wages by causing to be issued payroll payments to KENNETH LEWIS JAY aka "Lewy Jay," for work performed by DEBRA J. JAY.

34.    In or about 2014, JOHN THOMAS REESE and individuals not named herein concealed DEBRA J. JAY's true wages by causing to be issued payroll payments to KENNETH LEWIS JAY aka "Lewy Jay," for work performed by DEBRA J. JAY.

All in violation of 18 U.S.C. § 371.

//

//

INFORMATION-7
5-2-17 Reese Information.docx

## <u>NOTICE OF FORFEITURE ALLEGATIONS</u>

The allegations contained in Count 1 of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Upon conviction of the offense[s] in violation of 18 U.S.C. §§ 371, and 641 set forth in this Information, the Defendant, JOHN THOMAS REESE aka "Lewy Jay,", shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property constituting, or derived from, proceeds traceable to such violation(s). The property to be forfeited includes, but is not limited to, the following:

### MONEY JUDGMENT

A sum of money equal to $88,138.10 in United States currency, representing the amount of proceeds obtained as a result of the theft of government fund offense(s) for which the Defendants are jointly and severally liable.

If any of the property described above, as a result of any act or omission of the defendant[s]:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

//

//

//

INFORMATION-8
5-2-17 Reese Information.docx

pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

DATED this **2** day of May, 2017.

Joseph H. Harrington
Acting United States Attorney

George J. C. Jacobs, III
Assistant United States Attorney

INFORMATION-9
5-2-17 Reese Information.docx